INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, a Corporation, Appellant,

v.

CALIFORNIA STEVEDORE & BALLAST COMPANY, a Corporation, and Metropolitan Stevedore Company, a Corporation, Appellees.

No. 17569.

United States Court of Appeals
Ninth Circuit.

Sept. 4, 1962.

Barfield, Barfield & Dryden, Charles V. Barfield and Herbert Chamberlin, San Francisco, Cal., for appellant.

Cooper, White & Cooper, Sheldon G. Cooper and Robert M. Raymer, San Francisco, Cal., for appellee. George A. Helmer and Hartly Fleischmann, San Francisco, Cal., of counsel.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a judgment entered by the United States District Court in an action on policies of liability insurance. Having found diversity of citizenship and an amount in controversy exceeding $10,000, exclusive of interest and costs, the district court had jurisdiction under the provisions of Section 1332 of Title 28 United States Code. A timely notice of appeal was filed. This court has jurisdiction to review the judgment entered below under the provisions of Section 1291, Title 28 United States Code.

The controlling question here is whether the district court correctly held appellant liable to appellees under the policies

of liability insurance issued by the former to the latter.

Appellees are contracting stevedores. They were insured under liability policies issued by appellant. Appellees'· employees, who perform the work contracted for by appellees, are longshoremen. And when longshoremen work aboard vessels they are maritime workers having the benefits of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.; hereinafter referred to as "the Act"). The Act gives longshoremen their exclusive remedy against their employers for any personal injury arising out of their employment. (33 U.S.C.A. § 905.) Therefore a longshoreman cannot sue his employer for personal injuries arising out of his employment. He can, however, sue the owner or operator of the vessel aboard which he was injured.

Certain employees of appellees were injured aboard a vessel while performing stevedore services. The injured employees sued the shipowner for damages for bodily injury, alleging unseaworthiness of the vessel and negligence of the shipowners. No employee named his employer as a defendant. But in each action in which the shipowners were named as defendants by an injured employee of appellees, the shipowners, in turn, began an action against appellees. In other words, the shipowners filed third party complaints in which they were the third party plaintiffs and the appellees were the third party defendants. Consequently, every action brought by one of appellees' injured employees against the shipowners resulted in a second action being filed by the shipowners against appellees (these actions will be referred to as the "underlying actions").

The underlying actions filed by the shipowners against appellees were brought on contracts and sought indemnity, alleging that appellees had agreed to indemnify the shipowners for any liability imposed on the shipowners for injuries to longshoremen caused by appellees' failure to perform workmanlike services.

In each of the actions brought by employees of appellees the employees were performing their services under a written contract between the shipowners and the appellees. The district court, in one of the underlying actions, held that the appellees' agreement to indemnify the shipowners was not expressed in writing but "it was an actual provision of the written contract[s] implied-in-fact". (Hugev v. Dampsk., S.D.Calif., 1959, 170 F.Supp. 601, 608, affirmed, 9 Cir. 1960, 274 F.2d 875.) In the case at bar, the district court found, similarly, that though appellees' agreements to indemnify the shipowners were not expressed in writing, there was in each contract an implied-in-fact provision that appellees promised to perform their services with care, and, in the event of a breach of that promise, to indemnify the shipowners for any liability imposed upon the shipowner for injury to any longshoreman. (Findings of Fact Nos. 5, 16, 25, 35, 44 and 53.)

After the shipowners filed their action against appellees for indemnity, appellees requested appellant, under their liability insurance policies, to defend them in the action brought against them by the shipowners. Appellant rejected appellees' request. Appellees then retained their own counsel to defend the action brought against them by the shipowners, and brought the action here under review against appellant in declaratory relief and on the insurance policies.

Appellees' complaint in the case at bar originally contained eight claims for relief. The district court, however, was called upon to determine only six of these claims—the six being those in which the shipowners sought to impose liability upon appellees under the written stevedoring contracts in which the indemnity provisions were implied-in-fact.

In the claims of the shipowners against appellees seeking indemnity based on the implied-in-fact provision in the written contract between the two parties, appellees tendered the defense of each claim to appellant. Appellant rejected the de-

fense in each claim on the ground that the risk invoked was excluded by Exclusion (c) of the insurance policies.[1] Appellant did not assert any other grounds of non-liability; at the trial appellant stipulated that rejection was based only on Exclusion (c) and that appellant was precluded from raising any other grounds for the rejection.

The district court, in the case at bar, held that Exclusion (c) was inapplicable because it related to appellees' Employers' Liability to their employees whereas the underlying actions—as far as appellees were concerned—related to appellees' contractual liability to the shipowners. The district court also stated that even if Exclusion (c) were generally applicable, appellees' liabilities to the shipowners were within the exception to the Exclusion as a "liability assumed under written contract." The district court, therefore, held that under Coverage A, appellant was obligated to defend the actions brought by the shipowners against appellees; that appellant was in breach of contract; and that appellees' damages were to be measured by the amount appellees paid to the shipowners plus the related costs of defense.

Appellant's fourteen specified errors may be summarized (as they were in oral argument) as presenting the following two questions to this court:

(1) Did the district court err in giving judgment to appellees because the claims asserted against them by the shipowners were not within the coverage of the policies for the reasons that the claims came within Exclusion (c); and

(2) Did the district court err in giving judgment to appellees for counsels' fees and costs in defending against the third party complaints of the shipowners?

The district court held that all underlying actions were contract actions against appellees as indemnitors who had breached their contracts of indemnity (Conclusion of Law C, R. 119). This conclusion was, we believe, correct.

█ Appellant does not controvert the conclusion that appellees breached their warranties to perform their services in a workmanlike manner. The shipowners sought indemnity from appellees. That a claim for indemnity, in the circumstances of this case, is a contractual claim is well settled.[2]

Appellant's sole contention is—and must be because of its concessions in the district court—that appellees' losses were not within the coverage of the insurance policies because the losses fell within Exclusion (c).

We do not believe Exclusion (c) saves appellant.

█ The subject with which Exclusion (c) is concerned is Workmen's Compensation or Employer's Liability, or,

1. The pertinent parts of the insurance policies read:
   "Coverage A—Bodily Injury Liability
   "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person.
   \*      \*      \*      \*      \*
   "Exclusion (c)
   "This policy does not apply under coverage A, *except with respect to liability assumed under written contract*, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment of the insured, other than a domestic employee for whose injury benefits are not payable or required to be provided under any workmen's compensation law; or to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law; \*  \*  \*" (Emphasis added.)

2. Crumady v. The Joachim Hendrick Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413; Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 128–142, 76 S.Ct. 232, 100 L.Ed. 133; United States v. Rothschild International Stevedoring Co., 9 Cir. 1950, 183 F.2d 181; American President Lines v. Marine Terminals Corp., 9 Cir. 1956, 234 F.2d 753; Hugev v. Dampskisaktieselskabet International, 170 F.Supp. 601, 274 F.2d 875.

perhaps, both. The shipowners' claims in the case at bar dealt with neither. Appellees have not been held liable to their employees; appellees' losses were predicated on their breach of contract. Indeed, the Act precludes their liability to their employees. We do not read Exclusion (c) as excluding anything having to do with appellees' contractual liabilities. Having placed its sole reliance on Exclusion (c) as a justification for rejecting appellees' claims and refusing to defend appellees against the claims, we hold that appellant's sole defense fails.

But, even assuming that Exclusion (c) was generally applicable, we believe the district court was correct when it concluded:

"E. [Appellees] assumed liability under the written contracts mentioned in the findings of fact with respect to injury of [their] employees while engaged in the employment of [appellees] and because of bodily injury to such employees, [appellees were] obligated to pay damages as aforesaid to the promisees under said written contracts.

"F. Exclusion (c) of the insurance policies did not apply to the liability of [appellees] under the underlying actions so as to exclude the same from coverage."

Appellant contends that the determinative issue of this case is whether appellant's insurance policies extend coverage to the claims which appellees assert. This question, contends appellant, "must be answered by the insurance law of California." In support of the rule just announced, appellant cites cases for the proposition that in a diversity case the federal court is, in effect, but another state court. Appellant then cites many cases in which this court has followed and applied the last mentioned rule. Appellees, on the other hand, are "satisfied" that federal law is to be applied in the case at bar, but they do not quarrel with appellant on the question of which forum's law should be applied, because in their opinion both federal and California law lead to the same conclusion: affirmance of the district court's judgment.

■ Appellant urges that California law is the law by which its contracts of insurance must be construed. We might agree. But appellant's position is not thereby enhanced. Appellant fails to recognize that before *its* contracts of insurance are construed, the contracts between appellees and the shipowners must be construed. And the contracts between appellees and the shipowners are maritime contracts which are to be construed in accordance with *federal* law.[3]

3. "At the outset we are confronted with the question of the source of the law which governs the implied terms of agreements of independent contractors to do repair work on vessels. It has been long established that contracts for the repair of vessels are maritime contracts. North Pac. S.S. Co. v. Hall Bros. Co., 1919, 249 U.S. 119, 128–129, 39 S.Ct. 221, 63 L.Ed. 510; The General Smith, 1819, 4 Wheat. 438, 17 U.S. 438, 4 L.Ed. 609. In the two recent cases in which the Supreme Court announced and discussed the implied warranty of workmanlike service it evidently assumed the federal character of the law to be applied to maritime service contracts, since it did not in any way advert to state law. See Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

Moreover, we decided a closely related question of the source of law in A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir. 1958, 256 F.2d 227, where we held that an express indemnity clause in a contract between a stevedoring company and shipowner was governed by federal law, despite the Supreme Court's holding in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, that although federal competence existed state law would govern a contract of marine insurance. The reasons which then sufficed to distinguish contracts of insurance from express indemnity clauses in maritime service contracts apply with equal vigor to implied warranties in the same contract. Accordly we hold that federal maritime law governs the construction of the agreement here in issue." Booth Steamship Co. v. Meier & Oelhaf Co., 2 Cir. 1958,

This court, as did the court below, first must decide the terms of the written contracts between appellees and the shipowners. Thereafter we must decide if the claims asserted by the shipowners against appellees are within the coverage of appellant's insurance contracts; i. e., if appellees' liabilities to the shipowners were assumed under a written contract.

█ Under federal law, appellees' warranties to perform their services in a workmanlike manner were the essence of their contracts with the shipowners. This is clear from the Supreme Court's decision in the Ryan case,[4] supra.

Thus it appears clear that appellees' liabilities to the shipowners were assumed under written contracts. While it may be true that the same liabilities could be imposed under an oral contract, the fact remains that, here, appellees, either as good business or by good fortune, assumed the liabilities to the shipowners under a written contract.

This, then, brings us to the question of whether the liabilities imposed upon appellees by the shipowners were within the coverage extended by appellant's insurance policies. The short answer is that they were. Being liabilities assumed under written contracts, the clear and unambiguous language of appellant's insurance policies except these liabilities from Exclusion (c). This conclusion is consistent with California law.[5] Matsuo Yoshida v. Liberty Mutual Ins. Co., 1957, 9 Cir., 240 F.2d 824, is cited by appellant to support its position. Indeed, appellant cites the quoted language (note 5, supra).

262 F.2d 310, 312–313. And see Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56, differentiating Wilburn Boat Co. v. Fireman's Ins. Co., 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337. And this case has the "more genuinely salty flavor" of Kassick, rather than the potable fresh water of Wilburn Boat. (365 U.S. 742, 81 S.Ct. 886.)

4. There, at pages 133–134, 76 S.Ct. at page 237 the Court said:
"The shipowner here holds petitioner's [the stevedore's] uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. * * *"
See also the cases cited in footnote 2, supra. And, in passing, it may be noted that California law does not appear to be at war with Federal law on this point. Cf. San Francisco Unified School District v. California Building Maintenance Co., 1958, 162 Cal.App.2d 434, at 449,

328 P.2d 785, which cites, approves and follows Weyerhaeuser v. Nacirema Operating Co., supra, and Ryan v. Pan-Atlantic, supra.

5. In Matsuo Yoshida v. Liberty Mutual Ins. Co., 1957, 240 F.2d 824, at 826–827, this court said:
"This court has recognized and adhered to the well-settled rule of construction that where ambiguity or uncertainty exists in an insurance contract, such ambiguity or uncertainty will be resolved adversely to the insurer. [Citing California cases.] The rule has particular application where exclusions are involved. [Citing a California case.] However, the rule is not without limitation. Some actual or apparent ambiguity must be present before the rule comes into play. [Citing a California case.] Where there is no ambiguity, there is nothing to be construed. [Citation.] And a court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract. As stated by the California Supreme Court in Continental Cas. Co. v. Phoenix Construction Co., supra, [46 Cal.2d 423, 296 P.2d 806] 'An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.' * * *"

But we do not find that the Matsuo case aids appellant. Here there is no ambiguity. There is nothing to construe. Even if there were an ambiguity, then, as indicated in the language quoted in note 5, supra, the circumstances of the case at bar would require appellant's insurance policies to be construed in the favor of appellees and against the insurance company. Continental Cas. Co. v. Phoenix Constr. Co., 1956, 46 Cal.2d 423, 437, 296 P.2d 801, 57 A.L.R.2d 914. The result in either case is coverage.

The claims of the shipowners against appellees were within the coverage of appellant's insurance policies. Appellant was obligated, in accordance with the terms of the policies, to defend appellees from the claims, and to pay them. It follows that the district court also properly gave appellees judgment for their counsels' fees and related costs.

Affirmed.