ADVANCED AERONAUTICAL EN-
TERPRISES, INC.; A. Pascal Mah-
vi, Plaintiffs–Appellants,

v.

AMERICAS INSURANCE COMPANY,
Defendant–Appellee.

No. 99–55985.

D.C. No. CV–97–08831–CBM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2001.

Decided Feb. 27, 2001.

Before LEAVY, TROTT, and
SILVERMAN, Circuit Judges.

MEMORANDUM *

OVERVIEW

Plaintiffs–Appellants Advanced Aero-
nautical Enterprises, Inc. ("AAE") and A.
Pascal Mahvi ("Mahvi") seek damages for
the alleged breach of an aircraft insurance
policy by Defendants–Appellees Americas
Insurance Company and their underwrit-
ers ("Americas"). Because the parties are
familiar with the facts of this case, we
recount them here only to the extent nec-
essary to explain our decision. We have
jurisdiction pursuant to 28 U.S.C. § 1291,
and we AFFIRM.

DISCUSSION

A. Standard of Review

A grant of summary judgment is re-
viewed de novo. See Weiner v. San Diego
County, 210 F.3d 1025, 1028 (9th Cir.2000).
The interpretation and application of Cali-
fornia law by the district court are re-
viewed de novo. See Matter of McLinn,
739 F.2d 1395, 1397 (9th Cir.1984).

---

* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts
of this circuit except as may be provided by
Ninth Circuit Rule 36–3.

### B. Applicable Law

■ We must apply California law in resolving issues of state contract law. *See Stanford Univ. Hosp. v. Federal Ins. Co.,* 174 F.3d 1077, 1083 (9th Cir.1999). Because insurance policies are subject to the ordinary rules of contract interpretation, *see Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 551–52 (1992), we must apply California law in interpreting the insurance policy before us.

■ The central issue in this case is whether AAE's use of the aircraft in the filming of the Apple Box commercial constituted a "sales demonstration" or a "proficiency flight" under the operative policy. California law requires that we resolve this question by first looking to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. CAL. CIV. CODE § 1638 (West 2001). However, the language in an insurance contract must be construed in light of the circumstances at issue and cannot be found to be ambiguous in the abstract. *See* CAL. CIV. PROC. CODE § 1860 (West 2001) ("For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the Judge be placed in the position of those whose language he is to interpret."); *see also City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal.App.4th 445, 80 Cal. Rptr.2d 329, 349 (1998) (recognizing that extrinsic evidence of objective circumstances may be considered in determining the mutual intent of contracting parties). Thus, the language of the insurance policy issued by Americas must be construed in light of the particular circumstances of this case.

Moreover, we have recognized that the objectively reasonable expectations of the parties are the touchstone for interpreting insurance contracts under California law. *See Karen Kane Inc. v. Reliance Ins. Co.,* 202 F.3d 1180, 1188 n. 2 (9th Cir.2000); *see also* CAL. CIV. CODE § 1636 (West 2001) (providing that the fundamental goal of contract interpretation is to give effect to the mutual intention of the parties). Here, the relevant parties with respect to the operative policy are Americas and Neeley, the person at AAE responsible for securing insurance on the aircraft.

### C. The District Court Properly Concluded as a Matter of Law that AAE's Use of the Aircraft to Film a Commercial Fell Outside the Ambit of the Operative Policy

Both the objective expectations of Neeley and the circumstances surrounding the issuance of the operative policy establish that the phrase "Sales Demonstration and proficiency flights" was not intended to encompass filming contracts.

#### 1. *Objectively reasonable expectations of the parties*

AAE argues that Neeley understood the phrase "Sales Demonstration and proficiency flights" to be vague and inclusive, thereby precluding us from finding as a matter of law that the policy did not cover filming contracts. However, the following uncontroverted testimony of AAE's own insurance broker, Reed Clawson, proves otherwise:

Q: (Attorney) At the time that policy No. 0125247, the renewal policy, was issued, did you have any discussion with Mr. Mahvi or Mr. Neeley regarding potential uses of the aircraft, the A–4, during the policy term for purposes other than sales demonstration or proficiency flights?

A: (Clawson) I recall discussing with Guy [Neeley] the fact that should anoth-

er filming contract or similar contract arise in the future, that additional premiums could be charged under the policy by insurance underwriters to approve the additional contracts and that we would need to submit those contracts to underwriters and have the underwriters provide us with a proposed premium to include those contracts under the policy. Therefore, it is clear that Neeley did not believe that a filming contract constituted either a sales demonstration or a proficiency flight for purposes of the operative policy.

Further vitiating AAE's argument that Neeley believed the operative policy covered the use of the aircraft for filming contracts is Neeley's requirement that Apple Box secure a one million dollar third-party insurance policy on the aircraft, naming AAE as the beneficiary. The obvious implication of this requirement is as follows: if Neeley believed that the aircraft would be covered under his insurance policy with AAE during the filming of the commercial, why would he require Apple Box to obtain additional coverage?

AAE attempts to answer this question by arguing that Neeley was simply overly cautious and wanted to secure two policies on the aircraft. AAE's argument, however, is again belied by Clawson's testimony regarding his conversations with Neeley. With respect to Neeley's desire to have Apple Box obtain an insurance policy on the aircraft, Clawson stated:

> My recollection of my conversation with Guy [Neeley] was to the extent that he had advised me that insurance coverage was going to be afforded elsewhere [by Apple Box] and that we needn't bother with securing coverage under [the operative] policy.

The last phrase of the above quotation is the most illuminating. Neeley's statement to Clawson that they need not "bother with securing coverage under [the operative] policy" completely undermines AAE's assertion that Neeley wanted Apple Box to obtain insurance on the aircraft merely as an *additional* source of coverage. Therefore, the testimony of Clawson reveals that Neeley did not expect the operative policy to cover the use of the aircraft during the filming of the Apple Box commercial. Because it is Neeley's understanding of the contract, rather than AAE's abstract interpretations of it, that must govern our analysis, AAE's position fails as a matter of law.

2. *Interpretation of the operative policy under the specific circumstances of this case*

AAE suggests that the parties could have harbored the objectively reasonable expectation that the phrase "Sales Demonstration and proficiency flights" included all flights by Mahvi or Neeley, particularly when the flights were filmed. AAE's overly broad interpretation of the policy does not comport with the particular circumstances of this case and therefore fails. For example, under AAE's proposed reading of the operative policy, AAE would enjoy significantly *more* coverage than it had received under the original policy. This fact is especially striking considering Clawson's testimony that Neeley's sole purpose for restricting the permissible uses of the aircraft in the operative policy was to reduce AAE's annual insurance premiums by sixty percent. Common sense precludes us from concluding that AAE held an objectively reasonable belief that it could receive virtually unlimited coverage on its aircraft at forty percent of the original premium. Therefore, while AAE's assertion that the phrase "Sales Demonstration and proficiency flights" lends itself to numerous interpretations may be "correct as a matter of abstract philology, it is defective as a matter of policy interpretation because it disregards

the context." *Bank of the West,* 10 Cal. Rptr.2d 538, 833 P.2d at 552.

D. We Need Not Evaluate Mahvi's Objectively Reasonable Expectations of Coverage Under the Policy

Mahvi suggests that even if we find that Neeley did not have an objectively reasonable expectation of coverage for the use of the aircraft in a commercial, we must make an independent finding regarding his objectively reasonable expectations under the operative policy. Mahvi's argument misses the mark. Because AAE was the named insured under the operative policy, it is the reasonable expectations of AAE, rather than Mahvi, that serve to shape the contours of the contract.

AFFIRMED

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the court of this circuit except as provided by 9th Cir. R. 36.3.