**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SPARTAN IRON & METAL
CORPORATION,
<u>Plaintiff-Appellee,</u>

v.

LIBERTY INSURANCE CORPORATION,
<u>Defendant-Appellant.</u>

No. 00-1694

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
G. Ross Anderson, Jr., District Judge.
(CA-99-2575-7-13)

Submitted: March 13, 2001

Decided: March 28, 2001

Before WILKINSON, Chief Judge, and WILLIAMS
and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Paul W. Burke, Andrew C. Matteson, DREW, ECKL & FARNHAM,
L.L.C., Atlanta, Georgia, for Appellant. Michael B.T. Wilkes, Robert
E. Davis, THE WARD LAW FIRM, P.A., Spartanburg, South Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Spartan Iron & Metal commenced a civil action against Liberty Insurance to obtain payment under the second of two successive policies issued by Liberty for employee dishonesty. The district court granted summary judgment in favor of Spartan Iron and Liberty appealed. For the following reasons, we affirm.

I.

Liberty contracted to insure Spartan Iron against losses attributable to employee dishonesty through two successive one-year policies issued on October 1, 1996 and October 1, 1997, respectively. Each policy was separately numbered, and Spartan Iron paid a single annual premium for each.

During each of the policy years in question, a single employee stole in excess of the $100,000 per-occurrence limit of insurance under the policy then in effect. Spartan Iron accordingly filed a claim with Liberty for $200,000, alleging losses totaling $100,000 or more under each policy. Liberty tendered only $100,000, asserting that the acts in question constituted a single occurrence as that term was defined in the policies, and therefore Spartan Iron was entitled to recover only under the first of those policies. Spartan Iron thereafter filed suit in South Carolina for the claimed balance. Liberty removed the action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(a) (1994).

This Court reviews a grant of summary judgment de novo, viewing all facts and inferences in the light most favorable to the non-movant. Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc., 202 F.3d 223, 227 (4th Cir. 2000). In this review, we remain mindful that "[s]ummary judgment is appropriate where there is no genuine issue of material

2

fact, and the moving party is entitled to judgment as a matter of law." <u>Semple v. City of Moundsville</u>, 195 F.3d 708, 712 (4th Cir. 1999) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). Because it is undisputed that Spartan Iron satisfied all conditions precedent to payment for loss under the policies, and that Spartan Iron lost more than $100,000 during each of the policy periods in question to the same employee, the only issue to be decided is how the terms of those policies, which are identical in all respects, are to be interpreted.

At the outset, we note that determining the extent of an insurer's liability for losses spanning several years or successive policies is the subject of a long and varied jurisprudence. <u>See A.B.S. Clothing Collection, Inc. v. Home Ins. Co.</u>, 41 Cal. Rptr. 2d 166, 168-69 (Ct. App. 1995); <u>Penalosa Coop. Exch. v. Farmland Mut. Ins. Co.</u>, 789 P.2d 1196, 1200 (Kan. Ct. App. 1990). However, two approaches predominate. The first is to resolve the issue as a simple matter of contract interpretation. <u>See Omne Servs. Group, Inc. v. Hartford Ins. Co.</u>, 2 F. Supp. 2d 714, 719 (E.D. Penn. 1998); <u>Bethany Christian Church v. Preferred Risk Mut. Ins. Co.</u>, 942 F. Supp. 330, 335 (S.D. Tex. 1996); <u>Reliance Ins. Co. v. Treasure Coast Travel Agency, Inc.</u>, 660 So. 2d 1136, 1137-38 (Fla. Dist. Ct. App. 1995). The second focuses primarily on whether the parties intended coverage through one continuous contract or a series of independent contracts. <u>See Leonard v. Aetna Cas. & Sur. Co.</u>, 80 F.2d 205, 206 (4th Cir. 1935); <u>see also Karen Kane Inc. v. Reliance Ins. Co.</u>, 202 F.3d 1180, 1186 (9th Cir. 2000); <u>Diamond Transp. System, Inc. v. Travelers Indem. Co.</u>, 817 F. Supp. 710 (N.D. Ill. 1993); <u>A.B.S.</u>, 41 Cal. Rptr. 2d at 168-69; <u>Penalosa</u>, 789 P.2d at 1200; <u>Miami Springs v. Travelers Indem. Co.</u>, 365 So. 2d 1030, 1031 (Fla. Dist. Ct. App. 1979). We consider each in turn.

II.

A federal court sitting in diversity must apply the choice of law rules of the state in which it is located. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). It is undisputed that the underlying events triggering coverage under the policies occurred in South Carolina. Accordingly, South Carolina substantive law must shape our review of Liberty's policies with Spartan Iron. <u>See Sangamo Weston, Inc. v. National Sur. Corp.</u>, 414 S.E.2d 127, 130-31 (S.C. 1992).

Under South Carolina law, ambiguities in a contract for insurance are interpreted against the insurer. McPherson v. Michigan Mut. Ins. Co., 426 S.E.2d 770, 771 (S.C. 1993). A term is ambiguous only when it may fairly and reasonably be understood in more ways than one. Jordan v. Security Group, Inc., 428 S.E.2d 705, 707 (S.C. 1993). However, a court may not create an ambiguity where none exists. S.S. Newell & Co. v. American Mut. Liab. Ins. Co., 19 S.E.2d 463, 467 (S.C. 1945). Nor may a court torture the meaning of policy language to extend or defeat coverage that was never intended by the parties. Torrington Co. v. Aetna Cas. & Sur. Co., 216 S.E.2d 547 (S.C. 1975). Rather, a court must read the policy as a whole and consider the context and subject matter of the insurance contract in an effort to discern the parties' intention before declaring a term to be ambiguous. See Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348-49 (S.C. 1976).

Under these guidelines, the definition of "occurrence" provided in the Liberty policies is ambiguous. That definition provides: "Occurrence means all loss caused by, or involving, one or more `employees,' whether the result of a single act or series of acts." However, the definition does not affirmatively indicate whether a series of acts includes acts occurring outside the policy term. Other courts addressing this issue have found identical definitions of occurrence to be ambiguous on this point. See Karen Kane, 202 F.3d at 1185, 1186-88 (finding, as the district court did here, that other policy terms indicated that the definition of occurrence was temporally limited to the policy term); A.B.S., 41 Cal. Rptr. 2d at 174. As a result, the definition of occurrence presented here may fairly and reasonably be said to be ambiguous.

The cases supporting Liberty's construction of the definition of occurrence are readily distinguishable. Many of those cases turn on a common law definition of occurrence originally applied in this context in Appalachian Insurance Co. v. Liberty Mutual Insurance Co., 676 F.2d 56, 61 (3d Cir. 1982). However, courts adopting the Appalachian Insurance definition have done so in the apparent absence of a relevant definition in the policies themselves. See PECO Energy Co. v. Boden, 64 F.3d 852, 856 (3d Cir. 1995); Business Interiors, Inc. v. Aetna Cas. & Sur. Co., 751 F.2d 361, 362-63 (10th Cir. 1984). To adopt a common law definition here where the policies provide a con-

4

tractual definition would be at odds with South Carolina law. See Yarborough, 225 S.E.2d at 348-49 (stating that ambiguous terms should be considered in light of the rest of the policy); Green v. United Ins. Co. of Am., 254 S.C. 202, 174 S.E.2d 400 (1970) (stating that undefined terms in a contract should be given their "usual and ordinary" meaning). Accordingly, we decline to resolve the ambiguity in the definition of occurrence by incorporating the interpretation of occurrence of Appalachian Insurance and its progeny.*

Consideration of additional policy terms does not ameliorate this ambiguity in the definition of occurrence. Liberty's policies contain two boilerplate terms that are often considered in this context. The first is the Prior Insurance provision of Condition 9, which states that

> If any loss is covered:
>
> a. Partly by this insurance; and
>
> b. Partly by any prior cancelled or terminated insurance that [Liberty] or any affiliate had issued to you or any predecessor in interest;
>
> the most [Liberty] will pay is the larger of the amount recoverable under this insurance or the prior insurance.

Courts considering this term in materially identical factual contexts have alternatively found it to be ambiguous or dispositive of the issue at bar. See Karen Kane, 202 F.3d at 1185, A.B.S., 41 Cal. Rptr. 2d at 171-73; but see Diamond Transp., 817 F. Supp. at 712; Treasure Coast, 660 So. 2d at 1138. These varied interpretations of identical

_____
*Liberty cites a second line of cases beginning with Diamond Transp. Sys., Inc. v. Travelers Indem. Co., 817 F. Supp. 710, 712 (N.D. Ill. 1993), in support of its construction that the definition of occurrence unambiguously intends to include acts occurring beyond the policy period. 817 F. Supp. at 712; see also Bethany Christian Church v. Preferred Risk Mut. Ins. Co., 942 F. Supp. 330, 334 (S.D. Tex. 1996), citing Potomac Ins. Co. of Ill. v. Lone Star Web, Inc., 1994 WL 494784 (N.D. Tex. July 21, 1994). For reasons explained below, these cases are either distinguishable or insufficient to persuade us to adopt Liberty's construction.

5

contract language indicate that this term is fairly amenable to more than one reasonable construction, and therefore is ambiguous as well. See Jordan, 428 S.E.2d at 707.

The second provision to be considered is the Non-Cumulation provision of Condition 10. This term states that

> Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

As with Condition 9, courts considering terms identical to Condition 10 in the context of a course of employee dishonesty that extends over successive policies have found it to be ambiguous as to the issue of an insurer's liability under each of those successive policies. See A.B.S., 41 Cal. Rptr. 2d at 171-73; Miami Springs, 365 So. 2d at 1031. Accordingly, Condition 10 may fairly and reasonably be said to be ambiguous as to that point as well. Jordan, 428 S.E.2d at 707.

Although it is a close question, our review of the policies indicates that the definition of occurrence and the relevant policy terms are independently and collectively ambiguous as to whether a loss continuing over successive policies was intended to be covered under every policy in effect during the time span in which the employee dishonesty occurred or only the first of those policies. As a result, the ambiguity on this issue requires that it be resolved in favor of the insured, Spartan Iron.

III.

We reach the same result in applying the approach of the line of cases that address the issue of an insurer's liability for employee dishonesty over several years on the basis of whether or not the coverage in question was provided by means of one continuous policy or a series of successive and independent policies. Our review of the Liberty policies indicates they were intended as separate and independent contracts, in that each required a separate, single annual premium to be paid at its "inception." This interpretation is supported by two provisions in the Liberty policies.

6

The first such provision is almost identical to the term addressed in <u>Diamond Transp. Sys., Inc. v. Travelers Indem. Co.</u>, 817 F. Supp. 710 (N.D. Ill. 1993). Central to that court's finding in favor of the insurer was its conclusion that only one of the series of policies at issue remained in effect as coverage for the years in question. The court reached this conclusion based on the presence of the following term as quoted by that court:

> 3. CANCELLATION OF PRIOR INSURANCE: By accep-
> tance of this Coverage Part, you give us notice canceling
> prior policy/bond numbers, the cancellation to be effective
> at the time this Coverage Part becomes effective.

817 F. Supp. at 711. However, the corresponding Cancellation of Prior Insurance provision in the Declarations Form of the Liberty policies at issue in this appeal contains a colon after the word "numbers" and a space, indicating that the contracting parties are to specify which, if any, prior policies or bonds are to be canceled. Because no policy numbers were identified in the corresponding provision of either policy, it is reasonable to conclude that the parties intended to leave the prior policies open as independent avenues for recovery for acts occurring during their corresponding policy periods. Under this interpretation, Spartan Iron is entitled to recover under each policy in effect during the employee dishonesty in question.

This construction of the Liberty policies is also supported by Condition 13(b). The district court below noted that Condition 13(b) of the policies provides that Liberty is liable only for "loss [sustained] through acts committed or events occurring during the Policy Period." <u>Spartan Iron & Metal v. Liberty Ins.</u>, 99-CV-2575 (D.S.C. April 25, 2000). The district court concluded that this provision has the effect of severing the series of acts constituting an occurrence at the termination date of a policy, thereby permitting recovery under successive policies as the acts of employee misconduct continued. <u>See id.</u>, citing <u>Penalosa</u>, 789 P.2d at 1199-200. We agree that this language supports the argument that Liberty's policies with Spartan Iron were intended as successive and independent one-year contracts for coverage, and thus that the policy terms, including the definition of occurrence, should be construed accordingly to allow recovery under each of the policies issued to Spartan Iron.

7

On appeal, Liberty argues that Conditions 9 and 10 unambiguously indicate its intent to limit its liability, even under successive contracts, for any single employee's acts of dishonesty to the limit of insurance available when the acts began. In support, Liberty relies on <u>Reliance Ins. Co. v. Treasure Coast Travel Agency, Inc.</u>, 660 So. 2d 1136 (Fla. Dist. Ct. App. 1995). However, that court did not consider whether the policies in question were part of one continuous coverage or separate policies in reaching its decision. <u>Id.</u> at 1137-39. Additionally, neither the policy before that court nor the policy considered in <u>Diamond Transportation</u> contained a condition similar to Condition 13(b). Moreover, two courts that have considered policies with terms identical in all respects to the policy in <u>Treasure Coast</u> and those issued by Liberty to Spartan Iron have arrived at conclusions contrary to that reached in <u>Treasure Coast</u>. <u>See Karen Kane</u>, 202 F.3d at 1138; <u>A.B.S.</u>, 41 Cal. Rptr. 2d at 170-73. Accordingly, we find Liberty's contention unpersuasive.

Our review of Liberty's policies indicates that while they may be read to limit Liberty's liability in the manner it suggests, such an interpretation is not compelled. In light of the absence of clear and unambiguous language to the contrary, the coverage extended by Liberty to Spartan Iron is properly construed as being provided through successive and independent contracts for insurance. Accordingly, Spartan Iron may recover up to the limit of insurance under each policy in effect during the time the employee dishonesty in question took place. <u>Karen Kane</u>, 202 F.3d at 1184, quoting <u>A.B.S.</u>, 41 Cal. Rptr. 2d at 168-69 ("Where indemnity is afforded through separate and distinct contracts for specific policy periods the insurer is generally held liable up to its limit of liability for each policy period.").

IV.

In summary, although the question of coverage is a close one, we find that the definition of "occurrence" in Liberty's policies is ambiguous, and that it is not clear that the two polices issued to Spartan Iron should be construed as one continuous policy rather than separate and independent contracts. Accordingly, we are not persuaded that Liberty has limited its liability for any one employee's related acts of dishonesty to the coverage provided by a single policy. As a result, Spartan Iron was properly entitled to judgment as a matter of law. Accord-

8

ingly, we affirm the district court's order granting summary judgment in favor of Spartan Iron.

<u>AFFIRMED</u>

9